AUGUST HUESING

*v.*

THE CITY OF ROCK ISLAND *et al.*

*Filed at Ottawa May 16, 1889.*

1. MUNICIPAL CORPORATIONS—*general Incorporation law—powers in general.* A municipal corporation can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable.

2. SAME—*general and special grant of powers—of the exercise thereof.* An express grant of the power to pass ordinances upon a particular subject, limited, by the terms of the grant, in respect to its extent or objects and purposes, or in reference to the mode in which the power is to be exercised, may be held, unless a contrary legislative intent is manifest, to exclude all authority to legislate upon that subject beyond the prescribed limits.

3. Where there are both special and general provisions as to the power of a city to enact by-laws, as, in respect to health and sanitary matters, the power to pass by-laws, under the special or express grant, can only be exercised in the cases and to the extent, as respects those matters, allowed by the charter or incorporating act; and the power to

30—128 ILL.

pass by-laws, under the general clause, does not enlarge or annul the power conferred by the special provisions in relation to their various subject matters, but gives authority to pass by-laws, reasonable in their character, upon all other matters within the scope of their municipal authority.

4. SAME—*power in regard to sanitary matters—whether it extends to the erection and maintenance of public slaughter-houses.* Paragraph 78, of section 1, article 5, of the general Incorporation law, which declares that cities and villages shall have power "to do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," does not enlarge the sanitary powers conferred on cities in paragraphs 81 to 84, inclusive.

5. Under paragraphs 83 and 84, of section 1, article 5, power is conferred on incorporated cities and villages to prohibit slaughter-houses, or any unwholesome business or establishments, within the incorporation; and the common council, by appropriate ordinance, may regulate the location of unwholesome business, and they may cleanse, abate or remove the same. But this power does not authorize the passage of an ordinance appropriating public funds for the erection and maintenance of a public slaughter-house.

6. So a city organized under the general Incorporation law, has no power, either express or by implication, to pass an ordinance establishing a city abattoir or slaughter-house, and appropriate the funds or revenue of the city for its erection and maintenance.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Rock Island county; the Hon. JOHN J. GLENN, Judge, presiding.

Mr. IRA O. WILKINSON, Mr. WILLIAM JACKSON, and Mr. CHARLES DUNHAM, for the appellant:

Municipal corporations are limited to the powers expressly conferred or given by necessary implication. All corporate acts beyond the scope of the powers granted are void. To doubt the power is to deny it. 2 Kent's Com. (12th ed.) 288-299; Cooley's Const. Lim. 191-196; 1 Dillon on Mun. Corp. (3d ed.) sec. 89; *Bank of United States* v. *Dandridge,* 12 Wheat. 68; *Bank of Augusta* v. *Earle,* 13 Pet. 587; *Railroad Co.* v. *Harris,* 12 Wall. 81; *Thomas* v. *Railroad Co.* 101 U. S. 71; *Cook County* v. *McCrea,* 93 Ill. 236; *People* v. *Village of Crotty,* id. 180; *City of Champaign* v. *Harmon,* 98 id. 491.

But the enumeration of specific acts that may be done as to a particular subject, for the promotion of health or the suppression of nuisances, is, upon a familiar canon of construction, the exclusion of power to do anything further or other, as to that particular subject, to that end; and hence such an enumeration operates as a limitation upon the general power conferred. No other construction can give any meaning or force to the special provisions. 1 Dillon on Mun. Corp. (3d ed.) secs. 396, 316; *Thomas* v. *Railroad Co.* 101 U. S. 71; *City of Cairo* v. *Bross,* 101 Ill. 475, and cases cited below.

If the special provisions authorize only wholesome and reasonable acts, as must be presumed, then, under the general power, clearly they might be done without the special provisions. If, then, the only effect of the special provisions is to confer power, (and that, certainly, is all,) they are worse than useless, for that is given by the general provision. If, however, such special provisions are held, under the canon of construction already referred to, to be a delegation of all the power the General Assembly deemed necessary or was willing to grant with respect to the particular and special subjects for the promotion of health or the suppression of nuisances enumerated in such special provisions, then these special provisions become à limitation of the general power for the promotion of health, and so serve an important office, whereas otherwise they serve no purpose whatever. This construction does not do away with the necessity for, or militate against the propriety of, a grant of general power for the promotion of health, etc., but leaves such grant to be exercised for the promotion of health upon the numerous subjects needing regulations to that end, not specially provided for and enumerated in the other provisions of the law. *Mayor* v. *Linck,* 5 Eng. and Am. Corp. Cas. 393; 12 Lea, 499; *Long* v. *Taxing District,* 7 Lea, 134; *City Council* v. *Plank Road Co.* 31 Ala. 76; *Mount Pleasant* v. *Breeze,* 11 Iowa, 399.

Mr. WILLIAM McENIRY, City Att'y, and Mr. E. D. SWEENEY, for the appellees:

The city had the right to own and maintain this property as a place for the inspection of meats and animals, and to designate it as a place for such inspection.

The city has the power to build and maintain the abattoir as a public slaughter-house, as a sanitary measure for the suppression of the slaughter-house nuisance, as set forth in the answer, and for the promotion of the health of the city. Rev. Stat. art. 5, chap. 24, sec. 1, pars. 49, 50, 53, 76, 78, 81, 96; *Packing Co.* v. *Chicago,* 88 Ill. 224.

The law touching health regulations has not been laid down in any case, either in our own State or any other, sustaining the position of counsel for appellant. They are the first to push to the front their oft-repeated statement without authority, except the obsolete and irrelevant *Rumpff case* might be claimed as such, and against the reason and policy of the law. On the other hand, we cite as directly in point, *Packing Co.* v. *Chicago,* 88 Ill. 282; *Baumgardner* v. *Hasting,* 8 A. & E. 603; *Railway Co.* v. *Town of Lake View,* 105 Ill. 207; *Mayor* v. *Gerspach,* 33 La. 1011; *Hart* v. *May,* 3 Paige, 213; *Brady* v. *Insurance Co.* 11 Mich. 425; *Egan* v. *Chicago,* 5 Bradw. 75; *State* v. *Knoxville,* 12 Lea, 146; *Daniels* v. *Hilgard,* 77 Ill. 640; 1 Dillon on Mun. Corp. (3d ed.) secs. 144, 146, 281, 326; *Richard* v. *Gear,* 8 A. & E. 409; *Spaulding* v. *City of Lowell,* 23 Pick. 71; *Slaughter-house case,* 16 Wall. 36; *City of Milwaukee* v. *Gorss,* 21 Wis. 243; *Baer & Co.* v. *Massoch,* 97 U. S. 28; *McPherson* v. *Village of Chebanse,* 114 Ill. 46; *Tugman* v. *Chicago,* 78 id. 405.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by August Huesing, a resident and tax-payer of the city of Rock Island, to enjoin the municipal authorities of the city of Rock Island from main-

taining an abattoir or public slaughter-house, and appropriating the means of the city for that purpose. On the hearing in the circuit court, a decree was rendered in favor of the complainant in the bill, but on appeal to the Appellate Court, the decree was reversed, with directions to the circuit court to dismiss the bill. To reverse the judgment of the Appellate Court the complainant appealed to this court.

The city of Rock Island contains a population of about twelve thousand people, and is organized under the general Incorporation law of the State. The city council procured, by gift, two acres of land in the city, and erected thereon a building where animals might be slaughtered for consumption in the city. On the 7th day of December, 1885, an ordinance was passed. The first section provides that the premises containing the two acres is designated and established as the city abattoir. Sections 2, 3, 4, 5, 6, 7, 9 and 10 of the ordinance are as follows :

"Sec. 2. Said abattoir is established and shall be maintained for the sole use and purpose of so regulating the business of furnishing fresh meats to the inhabitants of said city as reasonably to secure to them good, fresh, wholesome meats.

"Sec. 3. The commissioner of health shall have the care, custody, charge and management of the city abattoir, and it shall be his duty to see that the same is conducted in a clean and orderly manner, and that all the provisions, rules and regulations adopted by the city council for the government and use thereof are enforced, and that the rights and privileges of all persons entitled to use the same are allowed and given, without discrimination or distinction ; and in the conduct and management of said abattoir the commissioner of health is hereby authorized and empowered to employ a deputy or deputies, the number and compensation of such deputies to be fixed and determined by the city council.

"Sec. 4. Every person licensed under the ordinances of this city to sell fresh meats shall be entitled to use said abat-

toir, upon compliance with the provisions, rules and regulations governing the use thereof.

"Sec. 5. If any person licensed under the ordinances of this city to sell fresh meats, shall, in the use of said abattoir, refuse or neglect to comply with the provisions, rules and regulations governing the use thereof, the commissioner of health shall suspend such person from further use thereof, and shall forthwith report such suspension and the cause thereof to the city council for its action thereon.

"Sec. 6. Said abattoir shall be open for use for the inspection and slaughter of animals each day from four o'clock A. M. to seven o'clock A. M., and from two o'clock P. M. to eight o'clock P. M., during the period from May 1 to November 1, and from six o'clock A. M. to nine o'clock A. M., and from eleven o'clock A. M. to six o'clock P. M., during the period from November 1 to May 1.

"Sec. 7. Every person licensed under the ordinances of this city to sell fresh meats, of cattle, hogs, sheep, calves or lambs, shall, before offering such meats for sale, have the same inspected and approved by the commissioner of health, or his deputy, at the city abattoir, or at any licensed packing-house or other place in this city licensed for the slaughter of animals; and it shall be the duty of said commissioner of health, in person or by deputy, to inspect meats at said places other than said abattoir at all reasonable hours, and to as fully as possible meet the convenience of persons asking such inspection.

"Sec. 9. All cattle, hogs, sheep and calves, the flesh of which shall be desired to be sold by any person licensed to sell fresh meats within the limits of this city, shall be first inspected by the commissioner of health, or his deputy, at the city abattoir, or at any licensed packing-house or other place in this city licensed for the slaughter of animals, before slaughter thereof, and before such flesh shall be sold or offered for sale by any person so licensed.

"Sec. 10.   It shall be unlawful for any person licensed to sell fresh meats, to sell or offer for sale within the limits of said city any fresh meats, (except venison, poultry, fish or wild game,) unless the same has been first inspected and approved by the commissioner of health, or his deputy, as herein provided."

Several questions of a technical character have been raised and discussed in the argument, but in the view we take of the record there is but one question of any importance presented, and that is, whether the city council of Rock Island, under its charter, had the power to pass the ordinance establishing the city abattoir, and appropriate the revenues of the city for its erection and maintenance; and this is the only question which it will be necessary to consider.

Under chapter 24, article 5, of our Revised Statutes of 1874, ninety-six separate and distinct powers have been conferred on the city council in cities, and upon the president and board of trustees in villages.   The powers relate to the various wants and necessities which the legislature no doubt supposed should be conferred upon such incorporations, to enable them to preserve order, prevent violations of law, make due and proper regulations to secure the health of the inhabitants, and such other things as pertain to the prosperity and welfare of such incorporated bodies.   It will be observed, however, that of the powers enumerated, none, in terms, authorize the construction or maintenance of an abattoir or public slaughter-house by the legislative department of the incorporation, and we find no such express power conferred by any provision of the statute. The city of Rock Island derives its powers, whatever they may be, from the act of the legislature providing for the incorporation of cities and villages, under which it is organized.   In *Cook County* v. *McCrea,* 93 Ill. 236, following the rule laid down by Dillon in his work on Municipal Corporations, it was held, that "a municipal corporation can exercise the following powers: First, those granted in express words; second, those

necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable." There being no provision of the general Incorporation law expressly conferring on the city the power to build or maintain an abattoir, if the power exists, it must be implied in or incident to some of the powers expressly granted by the statute; and it may be conceded, that if the implied power exists, it springs from some one of the specific health powers granted by the act of incorporation. Those powers are as follows:

"Paragraph 12. To provide for the cleansing of the streets, alleys, etc.

"15. To regulate and prevent the depositing of ashes, offal, dirt, garbage, or any offensive matter, in any street, alley, etc.

"40. To provide for the cleansing and purification of waters, water-courses, etc.

"49. To establish markets and market-houses, and to provide for the regulation and use thereof.

"50. To regulate the sale of meats, poultry, fish, butter, cheese, lard, vegetables and all other provisions, and to provide for place and manner of selling the same.

"53. To provide and regulate the inspection of meats, poultry, fish, butter, lard, cheese, vegetables, cotton, tobacco, flour, meal and other provisions.

"57. To regulate the construction, repairs and use of vaults, cisterns, areas, hydrants, pumps, sewers and gutters.

"75. To declare what shall be a nuisance, and to abate the same; and to impose fines upon parties who may create, continue or suffer nuisances to exist.

"76. To appoint a board of health, and prescribe its powers and duties.

"77. To erect and establish hospitals and medical dispensaries, and control and regulate the same.

"78.   To do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease.

"79.   To establish and regulate cemeteries, within or without the corporation, and acquire lands therefor, by purchase or otherwise, and cause cemeteries to be removed, and prohibit their establishment within one mile of the corporation.

"81.   To direct the location and regulate the management and construction of packing-houses, renderies, tallow chandleries, bone factories, soap factories and tanneries within the limits of the city or village, and within the distance of one mile without the city or village limits.

"82.   To direct the location and regulate the use and construction of breweries, distilleries, livery stables, blacksmith shops and foundries within the limits of the city or village. Also (A 91) to tax and license them.

"83.   To prohibit any offensive or unwholesome business or establishment within, or within one mile of the limits of the corporation.

"84.   To compel the owner of any grocery, cellar, soap or tallow chandlery, tannery, pig-sty, privy, * * * or other unwholesome * * * house or place, to cleanse, abate or remove the same, and to regulate the location thereof."

From an examination of these different provisions of the statute, can it, with reason, be said that the power to erect or maintain an abattoir can be implied in or incident to any one of them? We have not, after a careful consideration of the subject, been able to arrive at a conclusion of that character. Surely, there is nothing in the language of either of the powers granted that would lead to the conclusion that the erection of a public slaughter-house by the city was within the contemplation of the legislature in the enactment of these provisions.

But it is claimed that the city has the right to erect and maintain the abattoir under paragraph 53 of article 5 of the Incorporation act, which declares that the city shall have the

power to provide for and regulate the inspection of meats, poultry, fish, butter, lard, cheese, cotton, tobacco, flour, meal, and other provisions. Under this clause, the city of Rock Island had the undoubted power to make reasonable provision for the inspection of meats which may be offered for sale in the city, but an inspection of the ordinance will demonstrate that it is not one of that character. When the different provisions of the ordinance are considered, it is apparent that its true object and scope is to provide a place where all animals shall be slaughtered within the city, under the management, direction and control of the city. In other words, the ordinance provides for the erection and maintenance of a public slaughter-house within the city by an officer of the city. Section 6 of the ordinance provides that the abattoir shall be open for use for the inspection and slaughter of animals each day during the year during specified hours. Section 9 requires all cattle, hogs, sheep and calves, the flesh of which shall be desired to be sold by any person licensed to sell fresh meats within the city, shall be inspected by the commissioner of health, at the city abattoir, or at any licensed packing-house in the city, before such animals are slaughtered. The different provisions of the ordinance, as well as the answer of the city, show, beyond question, that the purpose of the city was not to provide a place for the inspection of meats. It would be placing too narrow a construction on the ordinance in question, and one, too, not authorized by its terms, to hold that it was designed to make provision for an inspection of meats.

But it is said the city has the power under paragraph 78, which authorizes it "to do all acts, make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease," as a sanitary measure. It will, however, be observed that the Incorporation act contains special enumerated provisions authorizing the city council to do certain specified acts for the preservation of the health of the city and the suppression of disease, as respects any offensive

or unwholesome business or establishment which may be conducted or maintained in the city. As has been seen, under paragraph 81 the city council is authorized "to direct the location and regulate the management and construction of packing-houses, renderies, * * * bone factories, soap factories and tanneries within the limits of the city, and within the distance of one mile without the city limits." Under paragraph 82 power is conferred "to direct the location and regulate the use and construction of breweries, distilleries, livery stables, * * * within the limits of the city. Also to tax and license them." And under paragraph 83 power is conferred "to prohibit any offensive or unwholesome business or establishment within, or within one mile of the limits of, the corporation," and under paragraph 84 the city council may "compel the owner of any * * * unwholesome * * * house or place to cleanse, abate or remove the same, and to regulate the location thereof." These are sanitary measures for the promotion of health and the suppression of disease, enacted for that purpose and no other. They provide and determine what may be done by the city council. If a slaughter-house within a city is an unwholesome business or establishment,— and it needs no argument to establish the fact that it is,—it may, by proper ordinance, be regulated—it may be prohibited. Under such circumstances, where there are both special provisions and a general provision relating to the same subject, as is the case here, the question arises, whether the general provision shall enlarge the powers conferred by the special provisions of the statute, or shall the powers specially conferred alone be exercised.

In *State* v. *Furgeson*, 33 N. H. 427, where a question of this character was under consideration, it was said: "The express grant of the power of legislation upon a particular subject, limited, by the terms of the grant, in respect to its extent or objects and purposes, or in reference to the mode in which it is to be exercised, may be held, unless the contrary manifestly

appears to be the intention of the legislature, upon a view of the entire act, to exclude all authority to legislate upon that subject beyond the prescribed limits.   *   *   *   It must be understood that the intention in the insertion of the general clause was to remove the implication which would otherwise arise, to restrain the city from enacting by-laws upon other subjects, and thus to empower them, by virtue of the special provisions conferring express power in the specified cases, to legislate upon those subjects under the limitations prescribed, and, by virtue of the general clause, upon all other matters coming within the scope of their municipal authority."

Dillon on Municipal Corporations (vol. 1, sec. 250, 2d ed.) lays down the rule as follows: "When there are both special and general provisions, the power to pass by-laws, under the special or express grant, can only be exercised in the cases and to the extent, as respects those matters, allowed by the charter or incorporating act; and the power to pass by-laws, under the general clause, does not enlarge or annul the power conferred by the special provisions in relation to their various subject matters, but gives authority to pass by-laws, reasonable in their character, upon all other matters within the scope of their municipal authority."   See, also, *City of Cairo* v. *Bross,* 101 Ill. 475.

Under these authorities, which we regard as declaring the correct rule on the subject, we do not think that section 78, relied upon, enlarged the powers conferred by the special provisions.

We have been referred, in the argument, to the "Slaughterhouse case," so called, (16 Wall. 36,) as an authority sustaining the ordinance in question. From an examination of the case cited, it appears that in 1869, the legislature of the State of Louisiana passed an act to protect the health of the city of New Orleans, to locate the stock-landings and slaughterhouses, and to incorporate the "Crescent City Live Stock-Landing and Slaughter-house Company." Under the act, all

animals intended to be slaughtered were required to be in-
spected and slaughtered at the company's slaughter-house, and
all other slaughter-houses within the city were required to be
closed.   The validity of the act was called in question mainly
on the ground that the legislature had no power to pass it;
but the Supreme Court of the United States held that the
legislature had the power, and that the power was properly
exercised.   But the decision has no bearing on the question
involved in this record.   The question here is not what power
the legislature has over the subject, or what power it may
exercise, but the question is, whether the legislature has con-
ferred the power on incorporated towns and villages organized
under the general Incorporation act.   We entertain no doubt
but the legislature has ample power to authorize an incorpo-
rated town to establish and maintain an abattoir, if it saw
proper, by appropriate legislation, to do so; but whether that
power has been conferred, presents entirely a different ques-
tion, and one upon which the case cited has no bearing.   The
legislature, in the exercise of its legislative powers, is unre-
strained, except so far as limitations have been prescribed by
the constitution of the United States or of the State, while, on
the other hand, a municipality can only exercise such powers
as have been delegated to it by the legislature.

*City of Milwaukee* v. *Gross*, 21 Wis. 243, is also relied upon
as an authority to sustain the ordinance of the city.   The or-
dinance in the case cited authorized the controller of the city
to procure from the owner of a certain slaughter-house in the
city the right of all city butchers to use the slaughter-house
free of charge, and all persons were prohibited from slaugh-
tering animals at any other place within the city.   The ques-
tion arose as to the power of the city to pass the ordinance,
and it was held that the city had the power.   But upon an
examination of the case it will be found that the statute un-
der which the city acted was much broader than our statute.
One clause of the act conferred the power "to direct the loca-

tion and management of slaughter-houses and markets." Under this and other provisions it was said: "These provisions of the charter give the common council ample authority to establish city slaughter-houses, and regulate the management thereof." There is such a distinction between the power conferred in the case cited and our general Incorporation act, that we do not regard the case as an authority. Besides, the ordinance passed in the case cited is very different from the ordinance involved here.

Under paragraphs 83 and 84 of our Incorporation act, heretofore cited, we think power is conferred upon incorporated towns to prohibit slaughter-houses or any unwholesome business or establishment within the incorporation; and the common council of the town, by appropriate ordinance, may regulate the location of any unwholesome business, and may cleanse, abate or remove the same. But such power does not authorize the passage of an ordinance like the one in question.

The judgment of the Appellate Court will be reversed, and that of the circuit court affirmed.        *Judgment reversed.*