THE PEOPLE *ex rel.* Julius Goldberg, Appellee, *vs.* FRED A. BUSSE, Mayor, *et al.* Appellants.

*Opinion filed June 16, 1909.*

1. STATUTES—*same word used in different clauses of a statute will ordinarily be given same meaning.* Where a word is so used in several clauses of a statute as to have a clearly defined meaning, the same word, when used in another clause, will be given the same meaning, in the absence of anything in the context to indicate that the legislature intended it to have a different meaning.

2. MUNICIPAL CORPORATIONS—*city has no express power to direct location of junk stores.* Clause 95 of section 1 of article 5 of the City and Village act, empowering cities "to tax, license and regulate second-hand and junk stores," does not, by the term "regulate," authorize the city to prohibit the location of junk stores in certain territory; nor do the other general clauses of such section add anything to the power given by said 95th clause. (*Patterson v. Johnson,* 214 Ill. 481, explained.)

3. SAME—*right of city to prohibit junk stores under its police power.* The right of a city to prohibit junk stores in certain territory depends upon whether the particular junk store is so conducted as to be, in fact, a nuisance, but it has no right to declare a junk store a nuisance which is not so in fact, nor to legislate upon the assumption that all junk stores are nuisances.

4. SAME—*a city has no power to direct location of junk stores generally.* A city has no power to provide, by ordinance, that no junk store, regardless of the manner in which it is conducted, shall be located or maintained without the written consent of a frontage majority of the property owners in the block in which such store is sought to be located or maintained.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

This is an appeal by Fred A. Busse, as mayor of the city of Chicago, and the city of Chicago, from a judgment entered in the circuit court of Cook county awarding a writ of *mandamus* commanding defendants to issue a license to Julius Goldberg, the relator, to keep a junk shop at No. 6406 South Halsted street, in that city, upon the

tender by him of the license fee and bond required by the ordinances of said city in relation thereto.

The petition for *mandamus* sets forth all of the ordinances alleged to be in force in the city of Chicago relating to junk shops, including section 692 of the Revised Municipal Code of said city as amended on July 13, 1908, which, in its amended form, reads as follows:

"It shall not be lawful for any person or corporation to locate, build, construct or maintain on any street or alley in the city any building or place used for junk shop or yard without the written consent of a majority of the property owners in the block in which said junk shop or junk yard is sought to be located, built, constructed or maintained, according to the frontage on both sides of such street or alley, nor for any person or corporation to locate, build, construct or maintain on any street or alley in the city in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building or place used for gas reservoir, packing house, rendering plant, soap factory, tannery, boarding, livery or sale stables, blacksmith shop, foundry, brewery or distillery, grain elevator, or laundry to be run by machinery, or machine shop, without the written consent of a majority of the property owners, according to the frontage on both sides of such street or alley. Such written consent shall be obtained and filed with the commissioner of buildings before a permit is issued for the construction of any such building or place, provided that in determining whether two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building fronting upon another street and located upon a corner lot shall not be considered."

The petition shows a readiness on the part of the relator to comply with the requirements of all the ordinances of the city except the section above set out, and states that his failure to procure the frontage consents, as provided for

in section 692 as amended, was the ground on which the mayor refused to issue a license; avers that the section in question is invalid, for the reason that the city council is without power to prohibit the location of a junk shop in any particular territory or to require the written consent of a majority of the property owners in the block in which it is to be located as a condition precedent to the issuance of a license to keep a junk shop, and that relator has for several years last past conducted a junk shop at the place designated in his application and has there built up a valuable business.

To the petition the respondents interposed a general demurrer, which was overruled, and having elected to stand by their demurrer a judgment was entered by the court awarding the writ of *mandamus* as prayed in the petition, and this appeal followed.

The only thing to be decided is whether the section of the ordinances above set out is valid as applied to a junk store. The cause comes directly to this court, as the trial judge made a certificate pursuant to section 118 of chapter 110, Hurd's Revised Statutes of 1908.

EDWARD J. BRUNDAGE, Corporation Counsel, and WILLIAM K. OTIS, for appellants:

Express power to regulate the location of junk shops is found in clause 95 of the enumerated powers of the city council, (Hurd's Stat. 1908, chap. 24, sec. 62;) "to tax, license and regulate second-hand and junk stores," and also in clause 17 of the general powers of the city council as enumerated in its previous charter. Horr & Bemis on Mun. Police Ordinances, sec. 30; *Cronin* v. *People,* 82 N. Y. 318; *State* v. *Beattie,* 16 Mo. App. 131; *St. Louis* v. *Russell,* 116 Mo. 248; *In re Wilson,* 32 Minn. 145; *St. Louis* v. *Jackson,* 25 Mo. 37; *Ex parte Byrd,* 84 Ala. 17; Hurd's Stat. 1908, chap. 24, art. 1, sec. 6.

Even if the city council were not authorized by a grant of express power to control the location of junk shops, it could accomplish this result as a police regulation under several of its enumerated powers. *Kiel* v. *Chicago,* 176 Ill. 137; *Cairo* v. *Bross,* 101 id. 475; *Gundling* v. *Chicago,* 176 id. 340; *Patterson* v. *Johnson,* 214 id. 481; *Chicago* v. *Gunning System,* id. 628; *Culver* v. *Streator,* 130 id. 238; Hurd's Stat. 1908, chap. 24, sec. 62, clauses 66, 75, 78, 84; *Spiegler* v. *Chicago,* 216 Ill. 114; *Duluth* v. *Bloom,* 55 Minn. 97; *Charleston* v. *Goldschmidt,* 39 S. C. 470; *Rosenbaum* v. *Newbern,* 118 N. C. 83; *Commonwealth* v. *Hubley,* 172 Mass. 58; *Huesing* v. *Rock Island,* 128 Ill. 465; *Oil Co.* v. *Danville,* 199 id. 50; *Barbier* v. *Connelly,* 113 U. S. 27; *St. Paul* v. *Schleh,* 101 Minn. 425.

The ordinance requiring the consent of a majority of property owners in the block as a condition to the maintenance of a junk shop is neither a delegation of the power conferred upon the city council, nor is it invalid as permitting arbitrary discrimination. *Chicago* v. *Stratton,* 162 Ill. 494; *Meyers* v. *Baker,* 120 id. 567; *Swift* v. *People,* 162 id. 534; *Fischer* v. *St. Louis,* 194 U. S. 361.

ELIJAH N. ZOLINE, for appellee:

Where power over a subject matter is expressly enumerated in the charter, the expression of the power implies the exclusion of all other powers over the same subject matter. *Kiel* v. *Chicago,* 176 Ill. 137.

If it had been the intention of the legislature to give to the city council power to direct the location of junk stores it would have added the words "to direct the location of" to the words "tax, license and regulate," in clause 95 of the enumerated powers, just as it uses the words "to direct the location" in other clauses of such section.

The enumeration of the powers to "tax, license and regulate" junk shops, contained in clause 95, excluded all other powers over the subject matter of junk stores, and par-

ticularly excluded the power "to direct the location of" junk stores.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The initial question involves a construction of the 95th clause of section 1, paragraph 62, chapter 24, Hurd's Revised Statutes of 1908. That clause, so far as material, confers upon the city council power "to tax, license and regulate second-hand and junk stores." Appellee's position is, that this does not empower the city to direct the location of such stores. It is conceded by appellants that the clause does not give to the city council a general power to prohibit, but it is contended that the word "regulate," as used in the clause, confers the power to prohibit within certain localities less than the entire territory included in the city. The word "regulate" is not, according to the definition of any modern lexicographer, so comprehensive in its meaning. We have, however, been referred to a number of authorities from States other than our own, in which the power to regulate has been held to include a power to designate the location of a particular business. We think the meaning of the word as used by our legislature in the clause in question may be ascertained by a consideration of various other clauses of this section of the statute, all of which were enacted at the same time. The 50th clause confers power "to regulate the sale of meats * * * and to provide for place and manner of selling the same." The 81st confers power "to direct the location and regulate the management and construction of packing houses * * * within the limits of the city," etc. The 82d confers power "to direct the location and regulate the use and construction of breweries * * * within the limits of the city." It will thus be seen that in each of the three clauses last cited the legislature apparently recognized the fact that the power to regulate did not include the power to prohibit within a certain territory. Had the legislature entertained

the view of appellants, it would not have seemed necessary
to include in those clauses designed to confer the power of
location, words for that purpose other than the word "reg-
ulate." If that word includes the power to prohibit in cer-
tain localities, other words found in those clauses giving
that power were entirely useless, and we must believe that
the legislature used such other words for some purpose.
Every word in a statute must, if possible, be given mean-
ing. It is clear that wherever the word "regulate" was
used in any of the clauses of section 1 (excepting for the
moment clause 95) with reference to any business of the
same physical nature as a junk store,—that is, a business
requiring like space for its operation and in which com-
modities are handled of like bulk as those to be found in
a junk store,—the power to regulate was not regarded as
including the power to fix the location. Where the latter
power was to be conferred, language was used other than
the word "regulate" from which it clearly appeared that
the power was given. Such being the case, we think that
the word "regulate," as used in the 95th clause, does not
include the power to fix the location of junk stores. The
meaning given to the word "regulate" is entirely clear
where it is used in the 50th, 81st and 82d clauses. The
same meaning will be attributed to it in the 95th clause, in
the absence of anything in the context of the statute to
indicate that the legislature intended to attach to it some
other and different meaning. *Rhodes* v. *Welty,* 46 Ohio
St. 234; *P. T. C. Co.* v. *F. R. R. Co.* 96 Va. 669.

It is next contended by appellants that express power to
direct the location of an offensive or unwholesome business
is found in the charter under which the city of Chicago
existed prior to the time when it adopted the present Cities
and Villages act; that the power so possessed under that
charter was saved to the city upon the adoption of the
present act by section 6 thereof, and that the power to fix
the location of a junk store exists by virtue of that pro-

vision in the former charter. This proposition is without weight, for the reason that the power conferred by the old charter, upon which reliance is placed, is also given by the various clauses of section 1, *supra,* of the present act.

It is then contended that if the city council was not authorized by an express grant of power to prohibit junk shops within certain territory it could accomplish this result by a police regulation under several of its enumerated powers. In this connection reference is made to the 66th clause of section 1, *supra,* conferring power to regulate the police of the city and pass and enforce all necessary police ordinances; to the 75th clause, conferring power to declare and abate nuisances; to the 78th clause, conferring power to do all acts and make all regulations necessary or expedient for the promotion of health and the suppression of disease; and to the 84th clause, conferring power to regulate the location of various unwholesome and nauseous houses or places, and to compel the owner to cleanse, abate or remove the same.

In *Kiel* v. *City of Chicago,* 176 Ill. 137, a prosecution had been successfully maintained against the agent of a brewing company whose brewery was located in Indiana for the violation of an ordinance providing that no person should carry on the business of a brewer without having first obtained a license for such business. The ordinance also contained a provision to the effect that the selling or delivering within the city of the product of a brewery located outside the city should be held to be the carrying on of the business of a brewer, within the meaning of the ordinance. Then, as now, clauses 82 and 91 of section 1, *supra,* empowered the city council to direct the location and construction of breweries and authorized that body to tax, license and regulate them. Those clauses gave no power over a brewery not within the city, but it was contended by the city that clause 46, which gave power to regulate and prohibit the sale of intoxicants, and clause 66, conferring

general police power, gave the authority to require a person to obtain a license before selling within the city the product of a brewery located without the city. This court held that the two clauses expressly conferring power to direct the location of and to license breweries were to be regarded as containing all the powers granted to the city in that respect, and that the enumeration of those powers in those clauses implied the exclusion of other powers which might have been granted notwithstanding the general clauses of the section, and denied the power of the city to require the agent to take out a license. Along the same line is *Huesing* v. *City of Rock Island,* 128 Ill. 465, where several earlier authorities upon this question of statutory construction were discussed, and the following language from Dillon on Municipal Corporations was quoted with approval, to-wit: "When there are both special and general provisions, the power to pass by-laws under the special or express grant can only be exercised in the cases and to the extent, as respects those matters, allowed by the charter or incorporating act; and the power to pass by-laws under the general clause does not enlarge or annul the power conferred by the special provisions in relation to their various subject matters, but gives authority to pass by-laws, reasonable in their character, upon all other matters within the scope of their municipal authority."

It follows that the general clauses of section 1, *supra,* add nothing to the power given by clause 95 to enact ordinances pertaining specially to junk stores. If in such general clauses there could be found words clearly indicating that it was the legislative purpose to make those clauses applicable to junk stores, the conclusion would, of course, be different.

Appellants, so far as this question is concerned, rely principally upon the case of *Patterson* v. *Johnson,* 214 Ill. 481. That case involved, among others, an ordinance of the city which provided that it should be unlawful to re-

pair or reconstruct any frame building "which has been injured more than fifty per cent of its original value by wear and tear, by the effect of the elements or by fire." The building involved was not within the fire limits. Clause 62 of section 1, *supra,* gave to the city council power to direct that any buildings within the fire limits which should have been damaged by fire, decay or otherwise to the extent of fifty per cent of their value should be torn down or removed, but that clause did not in express terms confer the power to pass the ordinance last above referred to. That ordinance was sustained by this court, and the contention of appellants seems to be that the rule of construction recognized in *Kiel* v. *City of Chicago, supra,* and *Huesing* v. *City of Rock Island, supra,* has thereby been departed from by this court, for the reason that clause 62 was not regarded as inclusive of all the power of the city council to legislate with reference to wooden buildings which had been depreciated fifty per cent in value by fire, decay or otherwise. It will be found upon an examination of the opinion of the court in that case, however, that the power exercised in passing the ordinance in question was upheld on the theory that the ordinance was directed against a nuisance, and not upon the theory that the city had general power to regulate the repair and reconstruction of a wooden building which was not a nuisance. It is conceded that a junk store is not a nuisance *per se.* Such a store may be so conducted as that it will not be more offensive to the physical senses than many other stores where commodities of like bulk are handled and dealt in which have not received the unfavorable attention of the law-maker. It is, of course, true that if a junk store is conducted in such a manner as to be a nuisance it may be absolutely prohibited by an ordinance passed under the power given to declare and abate nuisances, but that is because it is a nuisance and not because it is a junk store. This ordinance makes no distinction between a junk store conducted

in an unobjectionable manner and one that is conducted in such a way as to be an intolerable nuisance. The ordinance is against all junk stores, and the council does not have the power to declare a junk store to be a nuisance if it is entirely clear that it is not a nuisance. In that respect a junk store conducted in a lawful manner, with due regard for sanitary considerations and in such a way that it is not a source of discomfort to those in the vicinity, is distinguished from a wooden building, in a closely built portion of a city, which has been depreciated by wear or the action of the elements more than fifty per cent of its original value. Such a building, whether within or without the fire limits, the city council has the power to declare a nuisance, and it has the power to pass an ordinance declaring and providing for the abatement of nuisances, within which a junk store conducted in an improper manner would fall. This power is given by provisions of the statute which were successfully invoked by the city in the *Patterson case.* It is not contended here that a junk store so conducted as to be a nuisance may not be abated by virtue of ordinances enacted in pursuance of the police power. Such a contention would have no standing in any court. The position which to us seems impregnable is, that the power of the city to pass an ordinance aimed specially at junk stores must be found in clause 95, except the ordinance be confined to junk stores which are conducted in such a manner that the city council may rightfully declare them to be nuisances. The present ordinance is not so confined. We think it cannot be given effect so far as junk stores are concerned.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*