Summers, J.
The affidavit upon which the prosecution of French was based, is as follows:
“affidavit for city warrant.

“The State of Ohio, Lucas County, City of Toledo, ss.:

“Before me, Frampton Price, Deputy Clerk of the Police Court of the City of Toledo, Lucas County, Ohio, personally appeared Charles S. Northup who being duly sworn according to law, on his oath deposes and says, that on the 27th day of November A. D. 1906, at the city of Toledo, county of Lucas and state of Ohio, one Flenry E. French was unlawfully engaged, under the name of Union Loan Company, in the business of loaning money upon loans secured by mortgages on personal property, without first having obtained a license from the mayor of said city so to do; contrary to- the form of the ordinance in such cases made and provided.
“(Affiant) Charles. S. Northup.
*165 “Sworn to and subscribed before me, this 20th day of December A. D. 1906.
“(Seal) Frampton Price,

“Deputy Police Clerk.”

The affidavit, upon which the prosecution of Beck was based is as follows:
“affidavit for city warrant.
“(Filed February 4, 1907.)
“Before me, Louis E. Krieger, Clerk of the Police Court of the City of Toledo, personally appeared Frank A. Boyer who being duly sworn according to law, on his oath deposes and says that from, to-wit: the 1st day of January, 1907, to the 25th day of January, 1907, at the city of Toledo, Lucas county, state of Ohio, one Frank Beck, being then and there in the employ of FI. Lillie Mackey and Frank J. Máckey, co-partners doing business under the firm name and style of the Ohio Mortgage & Loan Company, which said co-partnership was at the city aforesaid and at the time aforesaid unlawfully engaged in the business of loaning money upon loans secured by mortgage on personal property, without first having obtained from the mayor of said city a license so to do, was then and there engaged, as such employe, in the business of loaning money upon loans secured by mortgages on personal property without said Beck first having obtained a license from the mayor of said city so to do, contrary to the form of the ordinance of said city in such case made and provided:
“(Affiant) Frank A. Boyer.
*166 “Sworn to and subscribed before me, this 4th day of February A. D. 1907.
“(Seal) Louis E. Krieger,

"Police Clerk.”

The statute, paragraph 30 of Section 1536-100, Revised Statutes, authorizes municipal corporations. to regulate and license “chattel mortgage and salary loan brokers." The affidavit in the French case does not charge that he, as a broker, either chattel mortgage or salary, engaged in that business, or that as such broker, he transacted such business without having obtained a license. The affidavit charges that he engaged in the business of loaning money upon loans secured by a mortgage on personal property without first having obtained a license. . The statute does not authorize municipalities to require a license to transact such business, or to regulate it. No general authority is referred to, under which, in the absence of the specific provision, the ordinance may be upheld. And if there was a general welfare clause, this special provision would be construed to contain all the power in that respect granted and to exclude any such power under the general grant. “When there are both special and general provisions, the power to pass by-laws under the special or express grant can only be exercised in the cases and to the extent, as respects those matters, allowed by the charter or incorporating act; and the power to pass bylaws under the general clause does not enlarge or annul the power conferred by the special provisions in relation to their various subject- *167 matters, but gives authority to pass by-laws, reasonable in ' their character, upon all other matters within the scope of their municipal authority.” 1 Dillon on Municipal Corporations, (4 ed.), Section 316. People, ex rel. Goldberg, v. Busse, Mayor, et al., 240 Ill., 338.
“A broker is an agent employed to effect bargains and contracts as a middleman between other persons for a compensation called brokerage. He takes no possession, as broker, of the subject-matter of the negotiations.” Webster’s International Dictionary. “Brokers are those who are engaged for others in the negotiations of contracts relating to property with the custody of which they have no concern.” Bouvier’s Law Dictionary. City of Portland v. O'Neil, 1 Ore., 218. If the word “broker” is used in this sense in the statute then clearly the affidavit does not charge the defendant with the doing of anything for which the statute authorizes the municipality to exact a license.
Counsel for the city contends that to give the words “chattel mortgage and salary loan broker” the technical meaning of the word “broker” contended for by counsel for plaintiff in error, would render the statute utterly futile, for the reason that there is no such business as that of an agent to procure chattel mortgage loans and that there is no class of persons that would come within its terms. “But there is a well known class of persons carrying on a well known business and the term chattel mortgage and salary loan brokers is the most apt and practically the only apt phrase that can be applied to them *168 and when applied it does not mean agént or middleman, but one who loans money on such security as household goods and assignments of wages.” He also points out that Webster’s Dictionary defines a broker as “A dealer in money, notes, bills of exchange, etc.,” and he refers to Section 3821-20, Revised Statutes, relating to banks and banking, which provides that all persons dealing in exchange, or who keep an office for the loaning of money shall be deemed and taken as brokers within the meaning of that chapter. He also points out that Webster defines a pawnbroker as “One who makes a business of loaning money on the security of personal property pledged or deposited in his keeping.” And also to the following language of Section 4387, Revised Statutes, “Whoever loans money on deposited pledges or personal property or who purchases personal property or choses in action, on condition of selling the same back again at a stipulated .price, is hereby defined and' declared to be a pawnbroker.” He further contends: “It appears, therefore, that as a pawnbroker is one who loans money upon the security of personal property deposited in his keeping to be forfeited in case of non-payment of the loan, a chattel mortgage and salary loan broker is one who loans money upon the security of personal property transferred to him by mortgage, bill of sale or other contract involving the forfeiture of such property for non-payment of the loan or upon assignment, bill of sale or other conveyance of salary or wages, and the municipality has the power to regulate both classes of business.”
*169 It is true that under the statutory definition of a pawnbroker, the business is not limited to a middleman, but the necessity that exists in such case for regulating the business and requiring reports is that he takes possession of the security, and that there would be no record or evidence of the transaction, whereas, in the case of loans upon chattel mortgage, possession of the property is not given and in order that the security may be made effectual it is necessary that the instrument be filed with some public officer, thereby disclosing the nature of the transaction and preventing abuse.
The same reasons exist for licensing and regulating dealers or persons who engage in the business of purchasing, or loaning upon, salaries as for licensing pawnbrokers, and it may be that respecting them the term broker would not be limited to 'a middleman, but we do not think the legislature intended to authorize the exaction of a license to engage in the business of loaning money upon loans secured by mortgage on personal property, and the necessity for and reasonableness of such a requirement would be questionable. No one will contend that the public welfare requires that such loans shall be inhibited, or that a license should be required of an individual desiring to make such a loan; and how many loans could an individual make before being held to be engaged in it as a business, and was it intended that a bank must obtain a license? The affidavit does not charge the defendant with the doing of any act for which the state authorizes the city to exact a license. *170 Other objections are made to the ordinance, and objection is made to that provision of the statute making the exhibition of a sign indicating such business conclusive evidence of the liability to obtain a license, but having found the affidavit insufficient it'is not thought necessary to consider them, or the question whether the ordinance as enacted can be upheld even as to chattel mortgage or salary loan brokers.
In the Beck case it is not charged that Beck was engaged in business on his own account, but that he engaged in the business as an employe. The statute does not provide that a license may be required of an employe, but that “In the trial of any action brought under the power of licensing herein given, the fact that any party to such action represented himself or herself as engaged in any business or occupation, for the transaction of which a license may be required or as the keeper, proprietor or manager of the thing for which a license may be exacted * * * shall be conclusive evidence of the liability of such party to pay the license therefor.” The affidavit is insufficient in the same respects as the affidavit in the French case.
The judgments are reversed and the defendants discharged.

Reversed.

• Crew, C. J., Spear, Davis, Shauck and Price, JJ., concur.