## Charles R. Walter et al., Appellants, v. Northern Insurance Company of New York, Appellee.

Opinion

filed March 9, 1938.

JACOBY & DALY, of Alton, for appellants.

WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

This appeal from the circuit court of Madison county is from a judgment of that court notwithstanding the verdict in favor of appellants in the sum of $1,605. The action is upon a general insurance policy with riot clause attached, which is the real groundwork of this lawsuit. Those sections of the policy with which we are here concerned are as follows: "`. . . 1. $3,500.00

on Dwelling House consisting of a two story frame building with slate roof, occupied and to be occupied only for dwelling purposes. . . . Supplemental Contract. . . . 2. Explosion, Riot, Aircraft and Self-Propelled Vehicles: In consideration of $.88 premium, the stipulation, terms, and conditions in the policy to which this Supplemental Contract is attached, the coverage of this policy is extended to include direct loss or explosion, riot, aircraft and self-propelled vehicles. . . . Special Stipulations, Terms and Conditions Applicable to Explosion and Riot Liability: . . . The Term 'riot' wherever used in this policy shall include direct loss from pillage and looting, when such pillage and looting occurs during and at the immediate place of a riot; riot attending a strike, insurrection and/or civil commotion. . . ."

The loss upon which this suit is based occurred during the night of January 3, 1936, and was first discovered on the morning of January 4, 1936. It consisted of the wanton and malicious spraying, smearing and daubing of creosote over the interior woodwork, plaster, floors and ceilings of a two-story residence at 1000 Logan street, Alton, Illinois. This residence was owned by the plaintiffs Walter, subject to a mortgage to the plaintiff Home Building and Loan Association, which joined as a plaintiff for the purpose of waiving its rights as mortgagee. It was covered by the insurance policy now in suit.

In their complaint the plaintiffs alleged that they were the owners and mortgagees of the building; that in consideration of the payment of a certain premium the defendant executed a policy of insurance, insuring them against loss or damage by riot; that on January 4, 1936, the building was damaged "by riot," that is, "by the unlawful application of creosote to the interior parts of the house with force by two persons together

—neither of which had any proprietary interest of any kind therein''; that they had performed all the conditions on their part required to entitle them to indemnity; that the defendant had denied liability on the ground that the application of creosote as alleged did not constitute a riot; that the plaintiff Home Building and Loan Association had joined for the purpose of waiving its rights, and that the defendant had refused to pay the loss, which was alleged to be $2,000.

To the complaint the defendant first filed a motion for judgment, grounded on the insufficiency of the plaintiff's statement of their cause of action. This was overruled.

The defendant's answer was then filed. It admitted the issuance of the policy and the receipt of the premium, but denied that the plaintiffs' building was damaged by riot—''that is, by the unlawful application of creosote,'' as alleged in the complaint, denied that the application of creosote was made by force, denied that all conditions precedent had been performed, denied that the application of creosote constituted a riot under the law or the policy, and denied generally all liability to the plaintiffs. The answer pleaded lack of specific knowledge as to ownership of the building, but admitted that the plaintiff Home Building and Loan Association had joined for the purpose of waiving its rights.

The evidence in the case fairly tends to prove the allegations of fact alleged from which appellants seek to draw the conclusions alleged in their complaint and upon which the jury found its verdict. The house was seriously damaged by the distribution of creosote. It is quite apparent that it was done by at least two people, but was done in the quiet of the night in such a manner as not to disturb even the next door neighbors. Some evidence appears that the house was entered by

force; a ladder was raised to a window on the second story, the said window opened in the nighttime for purpose of entrance. There was apparently no tumult and no affray; certainly there was no strike, insurrection or civil commotion.

The question for decision in this case is "Was the damage to the house done as the result of a riot within the reasonable meaning and intendment of the language of this policy?"

The rider attached to this policy insures the insured against riot without any qualification attached to the word. It does so in more than one instance. The expressions used in connection with the term "riot" are not qualifications of the term riot. They add to that term by insuring against other damages than those contained necessarily in the word riot. We can conceive of an insurance policy of this general character which would insure the insured against damages occurring out of riot without any reference to a riot itself, but this rider insures against riot unqualifiedly.

Where shall we look for a definition of the word "riot?" The damage done to the house in question together with the circumstances under which it was done constitute a riot within the meaning of our statute and the perpetrators of that offense could be punished under our statute as for riot. Why should we arbitrarily say that this language is to be defined by the common law definition of riot, or why should we say riot "As it is commonly understood," if indeed the thing done is a violation of our statute against riot? Riot in our State is a creature of our statute now. It is true that common law riot may be punished in Illinois; but not because it is common law riot; but because in common law riot is involved all of the elements of our statute on riot, and others besides. There are cases in Illinois which hold that the legislature, having de-

fined the term, all contract references to that term are to be interpreted by the definition of that term. (*Purtell v. Philadelphia & Reading Coal & Iron Co.*, 256 Ill. 110, 99 N. E. 899; *People ex rel. Fyfe v. Barnett*, 319 Ill. 403, 150 N. E. 290; *People ex rel. Goldberg v. Busse*, 240 Ill. 338, 88 N. E. 831; *Murrell v. Industrial Commission*, 291 Ill. 334, 126 N. E. 189; *People v. Landers*, 329 Ill. 453, 160 N. E. 836.) But whether they did so hold or not, it must be plain that a policy which insures against riot without any qualifying expressions must have reference to riot as our statute has defined it. We have held that the perpetrators of this offense were engaged in a riot. Whether there ensued any of the other damages insured against in this policy is not important. A riot occurred by which the insured was damaged and against which he was insured. That being the case it was a question of fact for the jury what was the amount of appellant's damages. They found that amount to be $1,605. In our judgment it was error to render judgment notwithstanding the verdict.

The judgment of the circuit court is reversed and the cause remanded with instructions to that court to enter judgment upon the verdict.

*Judgment reversed and cause remanded with instructions.*