NOT DESIGNATED FOR PUBLICATION

No. 115,971

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF GARDEN CITY, KANSAS,
*Appellee*,

v.

JOSE QUINONEZ-RANGEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed November 17, 2017.
Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*James R. Dummermuth*, city prosecutor, for appellee.

Before SCHROEDER, P.J., MCANANY and POWELL, JJ.

PER CURIAM:  Jose Quinonez-Rangel appeals claiming Garden City Ordinance
Section 86-2(192) (September 2015) (the Ordinance)—driving without a license—is
unconstitutional. He further claims K.S.A. 2015 Supp. 8-235 is not in substantial
compliance with the Ordinance to allow prior convictions under K.S.A. 2015 Supp. 8-235
to form the basis to enhance the minimum sentence of his current conviction. We find
Quinonez-Rangel's arguments are not convincing, and we affirm.

1

On December 28, 2015, the City of Garden City, Kansas (the City), charged Quinonez-Rangel with driving without a valid license, second violation, pursuant to the Ordinance. The municipal court found him guilty, and Quinonez-Rangel requested a trial de novo before the district court.

The district court also found Quinonez-Rangel guilty of a second violation for driving without a valid license. Pursuant to the Ordinance, the district court sentenced him to serve five days in jail and fined him $300.

ANALYSIS

*Ordinance 86-2(192) is Constitutional*

Quinonez-Rangel argues the City did not have the authority to enact the Ordinance because the Ordinance bears little resemblance to the Kansas statute it is derived from. As such, he contends the Ordinance is unenforceable. Though Quinonez-Rangel did not raise this issue before the district court, in his reply brief, Quinonez-Rangel contends the issue meets all three exceptions to the general rule prohibiting an issue from being raised for the first time on appeal. Exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal include: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Since Quinonez-Rangel's newly asserted theory is a question of law and is finally determinative

of the case—if the City had no authority to enact the Ordinance, it had no authority to convict him of violating the Ordinance—this court will consider the issue.

The constitutionality of an ordinance is reviewed de novo. An appellate court "must presume that the ordinance is constitutional, resolve all doubts in favor of validity, uphold the ordinance if there is any reasonable way to construe it as constitutional, and before striking the ordinance, [the appellate court] must conclude that it clearly appears to be unconstitutional. [Citation omitted.]" *City of Wichita v. Hackett*, 275 Kan. 848, 853, 69 P.3d 621 (2003).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan,* 303 Kan. 1017, 1019, 370 P.3d 417 (2016).

> "'An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. [Citation omitted.] When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, the court need not resort to statutory construction. *Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history . . . to construe the legislature's intent.* [Citation omitted.]' (Emphasis added.)" *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (quoting *State v. Keel*, 302 Kan. 560, 572, 357 P.3d 251 [2015]).

Quinonez-Rangel contends that, pursuant to K.S.A. 8-2001, "local authorities may only adopt additional regulations which are not in conflict" with the Uniform Act Regulating Traffic. However, Quinonez-Rangel's argument is fatally flawed:  K.S.A. 2015 Supp. 8-235 is not part of the Uniform Act Regulating Traffic. See K.S.A. 2015 Supp. 8-2204 ("The uniform act regulating traffic on highways includes K.S.A. 8-1560a through 8-1560d; all sections located in articles 10, 14 through 22 and 25 of chapter 8 of the Kansas Statutes Annotated; K.S.A. 8-1,129, 8-1,130a, 8-1428a, 8-1742a, 8-2118 and

3

K.S.A. 8-1599, and amendments thereto.") To the extent Quinonez-Rangel's argument relies on K.S.A. 8-2001, his argument is not persuasive.

Quinonez-Rangel also suggests "the City has exceeded its authority in setting up its escalating penalty scheme" because the Ordinance "goes beyond the State's grant of authority flowing from K.S.A. 8-235." For support, Quinonez-Rangel quotes *In re Van Tuyl*, 71 Kan. 659, 663, 81 P. 181 (1905):

> "Whenever both general and special delegations of authority are made to municipal corporations the special grants must be followed in everything to which they relate. (*State v. Ferguson*, 33 N.H. 424.) The prohibition to pass any other kind of ordinance is as clear as if the law expressly so stated (*Huesing v. City of Rock Island et al.*, 128 Ill. 465, 21 N.E. 558, 15 Am. St. Rep. 129); and any judgment rendered must find the field of its operation, and the basis of its validity, in the ordinance itself."

However, this argument also fails. The Kansas Supreme Court decided *Van Tuyl* before the Kansas Constitution was amended to grant local government home rule. See *Claflin v. Walsh*, 212 Kan. 1, 6, 509 P.2d 1130 (1973). Home rule is applicable when a local government exercises its police power for the health, safety, and general welfare of the public. *Blevins v. Hiebert*, 247 Kan. 1, 5, 795 P.2d 325 (1990). "No one questions a city's power to legislate by ordinary ordinance in the exercise of its police power so long as such ordinance does not conflict with state law, unless a state statute specifically preempts the field." 247 Kan. at 6. The test to determine whether an ordinance conflicts with state law is "whether the ordinance permits or licenses that which the statute forbids or prohibits that which the statute authorizes." *Junction City v. Lee*, 216 Kan. 495, 501, 532 P.2d 1292 (1973).

The Ordinance does not conflict with K.S.A. 2015 Supp. 8-235 and the statute does not specifically preempt the field. K.S.A. 2015 Supp. 8-235(a) states:

4

"No person, except those expressly exempted, shall drive any motor vehicle upon a highway in this state unless such person has a valid driver's license. No person shall receive a driver's license unless and until such person surrenders or with the approval of the division, lists to the division all valid licenses in such person's possession issued to such person by any other jurisdiction. All surrendered licenses or the information listed on foreign licenses shall be returned by the division to the issuing department, together with information that the licensee is now licensed in a new jurisdiction. No person shall be permitted to have more than one valid license at any time."

K.S.A. 2015 Supp. 8-235(e) makes driving without a license a class B misdemeanor. As such, the sentence for it "shall be a definite term of confinement in the county jail . . . and shall not exceed six months." K.S.A. 2015 Supp. 21-6602(a)(2). Similarly, driving without a license is subject to a fine not exceeding $1,000. K.S.A. 2015 Supp. 21-6611(b)(2).

The Ordinance does not permit conduct that K.S.A. 2015 Supp. 8-235 prohibits. Further, the Ordinance states in relevant part: "Violation of this section is punishable by a fine of not more than $1,000 or by imprisonment for not more than six (6) months or by both such fine and imprisonment." Ordinance 86-2(192)(a). Though the Ordinance contains escalating minimum penalties based upon the number of prior convictions for driving without a license, none of the Ordinance's penalties exceed the penalties for class B misdemeanors provided by K.S.A. 2015 Supp. 21-6602(a)(2) and K.S.A. 2015 Supp. 21-6611(b)(2). Since the Ordinance does not conflict with K.S.A. 2015 Supp. 8-235, and K.S.A. 2015 Supp. 8-235 does not specifically preempt the Ordinance, the City was authorized to enact its mandatory minimum penalty scheme. The Ordinance acts as a floor for the penalty to be imposed on each violation of the Ordinance and does not change the maximum sentence or fine that can be imposed. Quinonez-Rangel has not met his burden to show the Ordinance is unconstitutional.

*K.S.A. 2015 Supp. 8-235 Substantially Conforms to the Ordinance*

Quinonez-Rangel also asserts K.S.A. 2015 Supp. 8-235 is not in substantial conformity with the Ordinance. As a result, he contends a prior conviction under K.S.A. 2016 Supp. 8-235 cannot be used to increase the minimum sentence under the Ordinance.

Interpretation of statutes and ordinances is a question of law. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). Thus, this court has unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). The rules of statutory construction that applied in our discussion of Quinonez-Rangel's first issue also apply here.

Ordinance 86-2(192) states, in relevant part:

"(a) No person, except those expressly exempted, shall drive or operate any motor vehicle or motorized bicycle upon any highway in this city unless such person has a valid driver's license. Violation of this section is punishable by a fine of not more than $1,000 or by imprisonment for not more than six (6) months or by both such fine and imprisonment.

"(b) On a second conviction of a violation of this section, a person must serve at least five (5) consecutive days' imprisonment before the person is granted probation, suspension, or reduction of sentence or parole or is otherwise released, and be fined at least $300.

[Subsections (c) through (f) set out the penalties for the third through sixth violation of this ordinance.]

"(g) For the purposes of determining whether a conviction is a first, second, third, fourth, fifth, sixth or subsequent conviction in sentencing under this section, *'conviction' includes a conviction of a violation of any ordinance of any city, or resolution of any county, or a law of any state which is in substantial conformity with this section. It is irrelevant whether an offense occurred before or after conviction for a previous offense.*" (Emphasis added.)

6

Quinonez-Rangel argues the operative words of subsection (g) are: "with this section." He asserts that since the Ordinance consistently refers to "this section" as a whole, only convictions under ordinances, resolutions, or statutes with similar graduated sanctions satisfy Ordinance 86-2(192)(g). In his view, prior convictions under K.S.A. 2015 Supp. 8-235 cannot form the basis of a sentence enhancement because it does not contain escalating penalties. In contrast, the City argues an interpretation of the statute which requires the same sentencing structure for prior convictions to apply renders the word "any" meaningless.

The City's argument is more persuasive. Based on the plain language of the Ordinance, it is clear the City intended to discourage driving without a license by enhancing the minimum sentence for those individuals who habitually drive without a license. As the number of convictions for driving without a license increases, so does the minimum penalty. By enacting the Ordinance, the City made it clear it wants to limit the discretion of the sentencing court by setting the minimum sentence to be imposed based on prior convictions of substantially similar crimes. The plain language shows the City did not intend to limit the definition of convictions to convictions based on the Ordinance; instead, it includes "a conviction of a violation of any ordinance of any city, or resolution of any county, or a law of any state which is in substantial conformity with this section." Ordinance 86-2(192)(g). Interpreting the Ordinance's definition of conviction to apply only to ordinances, resolutions, or statutes with similar sentencing structures dramatically limits the Ordinance's effectiveness, particularly since K.S.A. 2015 Supp. 8-235, the statute criminalizing driving without a license, does not contain a similar penalty scheme.

Furthermore, interpreting the Ordinance as Quinonez-Rangel suggests would create an absurd result, which courts should avoid. See *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014) (The courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless

7

legislation.). If Quinonez-Rangel's interpretation was correct, a prior conviction under K.S.A. 2015 Supp. 8-235 would not qualify as a prior conviction even if it occurred within the City's limits.

The only section of the Ordinance which prohibits conduct is subsection (a); the remaining subsections simply set out the minimum sentences to be imposed based upon the number of prior convictions. Interpreting subsection (g) to require substantial conformity with the entire Ordinance, rather than simply subsection (a), is inconsistent with the City's obvious intent. K.S.A. 2015 Supp. 8-235 substantially conforms with Ordinance 86-2(192).

Affirmed.